## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND

**Civil Action No. 04-214**

**JANE BRANHAM,**                                      **PLAINTIFF,**

v.                          **MEMORANDUM OPINION AND ORDER**

**JEFF MAY, Individually and
In His Official Capacity as Superintendent
of the Lawrence County Schools; and
the BOARD OF EDUCATION OF LAWRENCE
COUNTY, KENTUCKY,**                                   **DEFENDANTS.**

This matter is before Court upon Defendants' Motion for Summary

Judgement [Docket No. 11] and Plaintiff's Motion for Summary Judgment

[Docket No. 12]. The motions have been fully briefed by the parties. In addition,

the Court heard the arguments of counsel at a Status Conference convened by the

Court on April 17, 2006.

## I.    FACTS

This case arises from the termination of Plaintiff Jane Branham's

employment as a secretary with the Defendant Lawrence County Board of

Education (hereinafter "the Board"). Based upon the record, Plaintiff has been

employed by the Defendant Board for nearly twenty years and has worked as the

1

secretary to several Superintendents.  At the time of the adverse employment action, Plaintiff was working for the relatively new Superintendent, Defendant Jeff May.

The events preceding and ultimately culminating in Plaintiff's termination in August of 2004  began in the spring of 2004 when a member of the Defendant Board, Rodney Hamilton,  verbally resigned from the Board.   Plaintiff states that within two months, she began receiving calls from the office of Gene Wilhoit, the Commissioner of Education, requesting a copy of Mr. Hamilton's formal resignation.  There is no dispute as to the legitimacy of the request as the Kentucky Department of Education oversees the local districts and is ultimately responsible for filling board vacancies.   Plaintiff alleges that each time she received such a request, she relayed the same to Defendant May and was advised, each time, by him that a formal resignation had not yet been obtained.

Based upon the record,  Mr. Hamilton's written resignation was eventually tendered  to Defendant May and presented to and accepted by the Defendant Board in a meeting held on or about July 19, 2004.

Plaintiff states that the day after the meeting, she asked Defendant May if she should prepare a cover letter so as to forward a copy of Mr. Hamilton's resignation to Commissioner Wilhoit.  Defendant May told her that he would

2

prepare the letter himself but requested that Plaintiff prepare the envelope in which to mail it. The Plaintiff complied.

Over a week later, on or about July 28, 2004, Plaintiff states that she received a call from the Commissioner's office during which she learned that they had yet to receive Mr. Hamilton's formal resignation. According to Plaintiff, the Commissioner's office asked her to send a copy to them via facsimile. She was told that they needed it immediately the deadline for placing the vacancy on the county election ballot was imminent. Plaintiff testified that she prepared a transmittal letter and faxed the document as requested. She claims that because the resignation had been presented to and accepted by the Board, was documented in the minutes of the meeting and was, thus, subject to an open records request pursuant to KRS 61, she did not believe she was acting inappropriately but, rather, just doing her job. Moreover, Defendant May had previously indicated that he was preparing to forward the document to the Commissioner himself. The record shows that Defendant May was not in the office that day.

Defendant May testified that he was surprised to receive a letter from Commissioner Wilhoit thanking him for a fax he received from May's office because May had hand-delivered the information to him. Defendant May asked the Commissioner to provide him with a copy of the fax reveived by his office. It

was then that Defendant May became aware that Plaintiff had sent the document to the Commissioner herself.

On or about August 5, 2004, Defendant May met with Plaintiff and advised her that she was being suspended without pay, pending an investigation, for taking the resignation document from his desk and faxing it to Commissioner Wilhoit.

The next day, Defendant May states that Plaintiff's KEA representative, Richard Mullins, came to his office.   At that time, Defendant May states that he offered to allow Plaintiff to simply resign.   Apparently, Mullins  requested that May not take any further action with regard to Plaintiff's employment until he had a chance to confer with Plaintiff.  Thus, Defendant May refrained from further action.

However, Defendant May testified that Mullins subsequently informed him that Plaintiff did not wish to resign.  Thus, by letter dated August 26, 2004, Defendant May advised Plaintiff that her employment had been terminated effective the same date [Docket No. 1, Exhibit 1].  The letter consists of a single sentence with no explanation as to the reasons for her termination.

On August 31, 2004, Defendant May sent another letter to Plaintiff in which he cited "performance of duties and violation of policy" as the basis for her termination, referred to his meeting with Mullins and purported to explain her due

process rights.   Included with the letter were excerpts from the Board's policies regarding due process and grievances as well as the form required to request a meeting with the superintendent [Docket No. 12, Exhibit B].

On August 31, 2004 and again on September 7, 2004, Plaintiff's counsel made written requests to the Defendants for written notification of the specific charges as well as a formal due process hearing.   The record contains no indication that  Defendants responded to these requests.

Thereafter, on November 15, 2004, Plaintiff filed the instant civil action, pursuant to 42 U.S.C. §1983, claiming deprivation of her rights to due process and equal protection, as well as violation of §2 of the Kentucy Constitution and KRS 161.011 and 160.390 (2).  She alleges that her suspension without pay and termination were void and seeks reinstatement, lost wages and benefits, damages for emotional distress and harm to her reputation, punitive damages, costs and attorneys fees as well as due process hearing.

The parties have filed cross-motions for summary judgement [Docket Nos. 11 and 12].

## II.   SUMMARY JUDGMENT STANDARD

When considering a motion for summary judgment , Rule 56 of the Federal Rules of Civil Procedure dictates that the Court consider the evidence, resolve all

doubts and construe all inferences in  favor of the nonmoving party, in this case,

the Plaintiff, in an effort to determine whether any genuine issues of material fact

exist.  However, in a series of decisions commonly referred to as the "trilogy",

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of

a scintilla of evidence in support of [a nonmoving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for"

that party.  Anderson, 477 U.S. at 252.  In short, the nonmoving party must

produce enough evidence, after having had a reasonable opportunity to conduct

discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford &*

*Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

## III.  ANALYSIS

### A. Governmental, Official and Qualified Immunity

At the outset, Defendants assert that the claims against them are barred by

governmental, official and qualified immunity.  With regard to the claims against

the Defendant Board and Defendant May in his official capacity, the Court finds

no operable doctrine of immunity.  While there may be other categories of claims

for which governmental and official immunity could apply,  Plaintff brings this

6

case pursuant to 42 U.S.C. § 1983, which does not recognize immunities arising from state law. *See e.g., Blaxkburn v. Floyd County Board of Education*, 749 F.Supp. 159 (E.D. Ky. 1999). Thus, the claims against the Defendant Board and Defendant May in his official capacity are not barred by either governmental or official immunity.

As for the claims brought against Defendant May in his individual capacity, they are viable as well. Government officials enjoy a limited, "qualified" immunity from constitutional and statutory claims brought against them. *See e.g. Saucier v. Katz*, 533 U.S. 194 (2001). Under the doctrine of qualified immunity, government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the "clearly established" prong of the inquiry is to "insure that the officials were on notice that their conduct was unconstitutional." *Caudill v. Hollan*, 431 F.3d 900, 911 (6th. Cir. 2005), *citing Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As articulated by the Supreme Court in *Saucier*, a government official cannot be held personally liable for conduct that he would not have reasonably known was unconstitutional. *Saucier*, 533 U.S. at 202.

In this case, Plaintiff argues out that her right to procedural due process in

7

the context of her suspension without pay and the subsequent termination from her

employment is a clearly established right under both state and federal law as well

as in the Defendant Board's own policies.  For example, Board Policy 3.27,

discussed in detail below,  provides a specific procedure for pre-termination due

process [Docket No. 19, Exhibit 1].  Given the well established law and the

specific provisions in the Board's own polices, Plaintiff maintains that it is

abundantly reasonable to assume that the Superintendent, Defendant May, was

aware of those rights.  The Court agrees.  Notably, in his August 31, 2001 letter

to Plaintiff, Defendant May makes repeated reference to Plaintiff's right to due

process.  Thus, to argue that such rights were not clearly established would be

specious, at best.  The Court finds that the claims against Defendant May in his

individual capacity are not barred by the doctrine of qualified immunity.

## B.  Due Process

Plaintff claims that the Defendants, while acting under color of state law,

acted to deprive her of her property right without due process by terminating her

employment without a hearing, as required by state law and board policy.

The Due Process Clause of the Fourteenth Amendment to the United States

Constitution "provides that certain substantive rights - life, liberty and property -

cannot be deprived except pursuant to constitutionally adequate procedures."

8

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985).

The Sixth Circuit adheres to a two-step inquiry in determining whether there has

been a violation of due process rights. *See generally, Mitchell v. Frankhauser, et*

*al.,* 375 F.3d 477, 480 (6th Cir. 2004), *citing Leary v. Daeschner,* 228 F.3d 729,

741-742 (6th Cir. 2000). First, the court determines whether the plaintff is entitled

to due process protection. Specifically, does plaintiff have a protected interest at

stake? If so, the court must then determine what process is due. *Id.*

This case involves the "property" component of the Due Process Clause. As

a threshold matter, Plaintiff must establish that she had a property interest in his

employment. It is well settled that, in this context, the existence of a property

interest depends largely on state law. *Bailey v. Floyd County Board of Education,*

106 F.3d 135, 141 (6th Cir. 1997) *citing Board of Regents of State Colleges v.*

*Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 548 (1972). Thus, in order

to establish a protected property interest in his employment, Plaintiff must be able

to point to some statutory or contractual right conferred by the state which

supports a legitimate claim to continued employment.

KRS 161.011 requires local school districts to enter into written contracts

with classified employees and to annually renew the contracts of employees who

have completed four continuous years of service. For those classified employees

in the latter category, the reasons for nonrenewal are delimited in the statute. KRS
161.011(5)(b). The statute further requires that local districts develop guidelines
and procedures which satisfy due process. KRS 161.011(9)©).

In this case, there is no dispute that Plaintiff had a protected property
interest in her employment, emanating from KRS 161.011.   The record shows
that Plaintiff has been a continuous, classified employee for well over four years.
Thus, she is within the statute's purview and entitled to its protections. Moreover,
in his deposition, Defendant May testified that the purpose of his August 31, 2004
letter to Plaintiff was to advise her of and honor her due process rights [Docket
No. 14,  Deposition of Jeff May, pg. 51]. Thus it seems that Defendants
acknowledge the existence of Plaintiff's property interest in her employment.

The question remains, however, what process was due? The Lawrence
County Board of Education's policies include a section entitled "Due Process
Provisions (Suspension Without Pay / Termination)" which provides:

> When an employee is to be terminated under KRS
> 161.011 or suspended without pay, the Superintendent
> shall give the employee written notification of charges
> against him/her, to include a statement of the right to
> meet with the Superintendent to discuss such charges,
> and a form, the signing and filing of which will
> constitute a demand for the meeting and a denial of the
> charges. The employee may request the meeting by
> filing the proper form with the Superintendent within

10

five (5) working days after receiving the notification of
charges.

[Docket No. 19, Exhibit 1].

This section clearly pertains to pre-termination or pre-suspension
procedures. In this case, the only pre-termination occurrence was the August 5,
2004 meeting between Plaintiff and Defendant May. Although Plaintiff was
advised, orally, of the reasons for her suspension, she received no written
notification until after she was terminated. Defendants violated their own policies
with regard to pre-termination due process.

Plaintiff urges that she is entitled to a post-termination hearing before a
neutral decision maker. The Court is mindful that there are no specific post-
termination procedures in place. The Sixth recognized the interplay between pre-
and post-termination procedures in *Mitchell* and reiterated that " 'the required
extent of post-termination procedures is inextricably intertwined with the scope of
pre-termination procedures' ." *Mitchell*, 375 F.3d at 480, *citing Carter v. Western
Reserve Psychiatric Habilation Center*, 767 F.2d 270. 273 (6th Cir. 1985)(per
curiam). The *Mitchell* Court found that where the pre-termination process is
"abbreviated", then post-termination due process must be more "meaningful." *Id.*
at 481. "Meaningful" post-termination due process requires that the "discharged

11

employee be permitted at attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on (her) own behalf, and to know and have an opportunity to challenge the evidence against (her)." *Id.*

In this case, the Court finds that the pre-termination due process afforded Plaintff was, at best, "abbreviated", thereby warranting a more "meaningful" post-termination hearing.

As for Defendants' argument that Plaintiff herself failed to comply with the policies by failing to complete the requisite form, provided to her as an attachment to Defendant May's August 31, 2004 letter, the Court is not inclined to view this as a waiver of due process.   Indeed, Plaintiff's counsel sent not one, but two letters to Defendant May, dated August 31, 2004 and September 7, 2004, requesting post-termination due process.  The record shows that Defendants never responded to these requests.

The Court finds that Plaintiff was entitled to due process and received little, if any, in this regard.

However, at the April 17, 2006 Status Conference, counsel for both parties stated that a hearing, at this juncture, would add little, if anything, to the evidence already in the record.   Counsel for both Plaintff and Defendants agreed that with regard to Plaintiff's due process claim, the record is complete.  Therefore, the

12

Court is not inclined to order the parties to go through the motions of a post-termination hearing when the Court may decide this case upon the record before it.

Having reviewed the record and having considered the arguments of counsel, the Court finds that there was no justification for the adverse employment action in this case.   Although Defendant May describes Plaintiff's actions as insubordinate, the record paints a very different picture, that of a dutiful employee, acting loyally not only to Defendant May but to the Board.   The record shows that Defendant May was supposed to forward the subject letter of resignation to the Commissioner Wilhoit's office but failed to do so, despite the Commissioner's repeated requests.

Defendant May's only explanation for suspending and ultimately terminating Plaintiff from her employment appears to be  that she should not have gone into his office and removed the resignation letter.   However, the record is devoid of any indication that during her almost two decades of service to the Board that she was told by Defendant May or his predecessors that she was not, under any circumstances, to enter his office and handle documents contained therein.   To the contrary, Plaintiff is charged with  keeping the records of the Defendant Board which are housed in the Superintendent's office.

13

Defendant May makes much of the typographical errors in Plaintiff's transmittal letter to Commissioner Wilhoit. However, those error were most probably committed in haste and reflect Plaintiff's fear of not responding to the Commissioner's request.

The Court finds Defendant May's reasons for the adverse employment action against Plaintiff to be insufficient. Defendant May's reaction to Plaintiff's conduct was disproportionate, at best. Her suspension and termination were unwarranted.

### C. Equal Protection

At the April 17, 2006 Status Conference, counsel for Plaintiff stated that if the Court were to rule in Plaintiff's favor with regard to her due process claim, she would not pursue her equal protection claim. As such, the Court need not address the merits of this claim.

## IV.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

(1)   that  Defendants' Motion for Summary Judgment [Docket No. 11] be **OVERRULED** and Plaintiff's Motion for Summary Judgment [Docket No. 12] be **SUSTAINED** insofar as it pertains to Plaintiff's deprivation of due process;

14

(2)     that Plaintiff's employment be **REINSTATED** in a comparable

position;

(3)     that all questions as to monetary damages are reserved by the Court

pending a stipulation by the parties;

(4)     in the event that a stipulation is not filed, the Court will convene a

hearing on damages only on **Monday, July 31, 2006** at **9:00 a.m.** at

the United States District Courthouse in Ashland, Kentucky; and

(5)     that  Defendants' Motion for Summary Judgment [Docket No. 11]

and Plaintiff's Motion for Summary Judgment [Docket No. 12] be

**OVERRULED** as **MOOT** insofar as they pertain to Plaintiff's equal

protection claim.

This ___/7___ day or April, 2006.

_____

Henry R. Wilhoit, Jr., Senior Judge